No. 14863

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

BEVERLY IRENE STRAIN
and JAMES DALE YOUNG,

Defendants and Appellants.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade.
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellants:

James A. Lewis argued and Daniel Donovan argued,
Public Defenders, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mary B. Troland argued, Assistant Attorney General,
Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Thomas M. McKittrick argued, Deputy County Attorney,
Great Falls, Montana

Submitted: May 22, 1980

Decided: OCT 22 1980

Filed:

*Thomas J. Kearney*

_____
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendants Beverly Strain and James Young each appeal from a judgment of the Cascade County District Court entered on a jury verdict, finding each of them guilty of felony theft.

Defendants were charged with stealing a television set from the Sheraton Inn in Great Falls on October 14, 1978. Defendants have also been charged by separate informations with stealing a television from the Triple Crown Motel in Great Falls on October 15, 1978, and with stealing a television from the Shasta Motel on October 16, 1978. The televisions were never recovered. Before trial, the prosecutor dismissed the theft charge against Strain for the apparent reason that the evidence was not sufficient to establish her identity. Before trial of this cause, Strain moved that she be tried separately from Young, but the trial court denied this motion.

Witnesses identified Strain and Young as having checked into the Sheraton Inn and having the room from which the television was stolen. The trial court also admitted evidence of the television thefts from the Triple Crown Motel and the Shasta Motel. Witnesses identified Strain and Young as having checked into the Triple Crown Motel and having the room from which the television was stolen. A witness also identified defendant as having checked into the Shasta Motel and having the room from which the television was stolen. The witness could not, however, identify Strain as the woman who was with the defendant on that evening. At the conclusion of the trial, the trial court provided a cautionary instruction to the jury which told them the purpose for which evidence of other thefts was admitted and

-2-

the limited purposes for which it could be considered. The defendants' defense was alibi. Although neither defendant testified, the same witnesses testified for each defendant providing them with an alibi for the theft charge relating to the Sheraton Inn and with relation to the Triple Crown Motel and Shasta Motel. A jury convicted both defendants of stealing the television set from the Sheraton Inn. The trial court sentenced Young to eight years in prison and Strain to five years in prison. The trial court initially found that both defendants were dangerous offenders for purposes of parole eligibility, but later found this to be an error and properly designated each defendant as nondangerous for purposes of parole eligibility.

Both defendants claim that the photographic identification procedures used after their arrest, and the subsequent in-court identification procedures violated their rights to due process of law. They also claim that improper instructions were given with relation to identification evidence, and that the trial court erred in not giving their offered instructions on this issue. Both defendants also claim that evidence of other crimes was improperly admitted, that the procedures as set forth in State v. Just (1979), ____ Mont.____, 602 P.2d 957, 36 St.Rep. 1649, were not followed, and further-more, that the cautionary instruction given was overly broad. In a related claim, Strain asserts that she and Young should not have been tried together and that the trial court erred in not granting her motion for severance. Both defendants also claim that the trial court did not properly instruct the jury with relation to their claim that a witness prejudiced their right to a fair trial by stating that she had been intimidated by defense counsel during a photographic identification process prior to trial. The last issue, that

-3-

of improper designation as dangerous offenders, is now moot because the trial court corrected its error and properly designated each defendant as nondangerous.

The modus operandi involving the thefts from each of the motels is strikingly similar. On October 14, 1978, a man and a woman entered the Sheraton Inn and the man requested a ground floor room explaining that the woman suffered from a hip ailment. Personnel assigned the couple to room 109. The next day, at about noon, personnel discovered that the television set, a mirror, a table and some bedding were missing from room 109. On October 15, 1978, a couple checked into the Triple Crown Motel, and the man requested a ground floor room and again informed the personnel that the woman had a painful hip condition. The next day it was discovered that the television set was missing from the room where the couple had been assigned. On October 16, 1978, a young couple entered the Shasta Motel and the man requested a room. The Shasta Motel has only one floor. The next day, a television set was discovered missing from the room where the couple had been assigned.

The following evidence links the defendants to the Sheraton Inn theft, the one in which they were charged and convicted. On the night of the 14th, the night clerks at the Sheraton, Robert Mort, Jr. and Gerald Traxinger, registered the couple. Mort got a good look at both people. The next day at about noon, a maid at the Sheraton Inn saw a man coming out of room 109 into the parking area. A person from the doctor's office, identified by the appointment card found in room 109, bearing Young's name, testified that Young was the person for whom she had made an appointment and that he had given the name Jim Young.

Both Young and Strain had interposed an alibi defense through the testimony of Strain's mother and stepfather. Neither of the defendants testified.

-4-

Both night clerks involved with the registration at the Sheraton Inn on the night of October 14, gave physical descriptions of the couple to the police. At that time, neither man could identify Young from a group of pictures shown to them by the police. After the arrest of Young and Strain, however, Mort positively identified from photographs, both Young and Strain as having been the persons who had checked into room 109 on October 14. At trial, Mort also identified both defendants as having been the couple who checked into room 109 on October 14.

The trial court also admitted evidence in relation to the television theft from the Triple Crown Motel which occurred on October 15, and the television theft from the Shasta Motel which occurred on October 16. The stated purpose was to show a common scheme or plan of operation.

At photo displays after the defendants' arrest, and while they were in custody, Young was positively identified as the man who had checked into rooms at the Triple Crown Motel and the Shasta Motel from which television sets were stolen. At trial, an employee of the Triple Crown Motel identified Young as having been the person who checked into the room from which the television set was stolen. An employee of the Shasta Motel identified Young as having been the person who checked into the room from which the television set was stolen.

The night clerk at the Triple Crown Motel also made a probable identification that Strain was the woman with Young when he checked into the room on October 15. At trial, he made a similar probable identification of Strain as the person who was with Young. There was no evidence to establish, however, that Strain was the woman with Young when he checked into the room at the Shasta Motel. The State, it should be

-5-

noted, did not claim to have any evidence connecting Strain to the television theft from the Shasta Motel.

Both defendants attack the photo-identification procedures used after the defendants were arrested and in custody. Their central contention is that the procedures used unduly suggested to the witnesses that they choose the defendants from the pictures presented, and that the later in-court identifications were thereby sufficiently tainted as to make the identifications inherently untrustworthy. Defendants would have us, in this regard, establish a rule that once a defendant is in custody, he should have counsel present at any photo-identification session, even if the session involves an offense not related to that for which a defendant is in custody. Defendants rely on People v. Richards (1977), 76 Mich.App. 695, 256 N.W.2d 793. They would also have this Court establish a rule that a defendant in custody be entitled to a physical line-up rather than a photographic line-up process. They rely on State v. Classen (1979), 285 Or. 221, 590 P.2d 1198. We decline at this time, to adopt the rules set forth in these cases.

Young offers nothing in support of his contention that the photo-identification process was unduly suggestive. Defects in procedure go to the weight of the identification testimony. See, State v. Oppelt (1978), 176 Mont. 499, 580 P.2d 110, 114, 35 St.Rep. 727, 732. Relying on tests set forth by the United States Supreme Court, this Court in State v. Pendergrass (1978), ___ Mont. ____, 586 P.2d 691, 696-697, 35 St.Rep. 1512, 1517-1519, set forth the factors to be considered in assessing reliability. We find no evidence that the State did not comply with the requirements of Pendergrass.

-6-

Strain contends that the photo-identification process was unduly suggestive because she wears glasses and that in only one of the four women's pictures shown to the witnesses, did the person wear glasses. For this reason, she argues that the State invited the photo-display witness to point directly to her. We note, however, that although this does connote suggestiveness, it did not arise to "a very substantial likelihood of irreparable mis-identification." Pendergrass, supra, 586 P.2d at 686. Each of the women in the photographs resembles the others in general appearance. Each of the photographs also depicts a woman who generally matches the verbal description of the person checking into the Sheraton Inn and Triple Crown Motel with Young. Witness Washburn testified that he had seen the woman both with her glasses on and off. Although the glasses do constitute a single distinguishing characteristic, we cannot say that this feature is so unnecessarily striking as to corrupt the entire display procedure and raise the likelihood of mis-identification. We discussed the issue in the second Pendergrass case, State v. Pendergrass (1980), ____Mont. ____, 615 P.2d 201, 37 St.Rep. 1370, 1373-1374. See also, United States v. Harrison (2nd Cir. 1972), 460 F.2d 270, 271 (per curiam), cert.den. 409 U.S. 862 (1972). Given this situation, there is no basis for holding the witness's identification testimony, whether positive or tentative, inadmissible at trial. State v. Oppelt, supra, 176 Mont. 499, 580 P.2d at 114.

Defendants also attack the jury instructions given in relation to the identification process, and further contend that the trial court erred in rejecting their proffered instructions in relation to the identification process. The trial court rejected the defendants' offered instructions because it believed them to be a comment on the evidence.

-7-

The general instruction relied on by the State is a general instruction entitled, Credibility of Witnesses-- Discrepancies in Testimony. The instruction generally states the rights and duties of the jury in relation to giving credibility to testimony, which includes the witnesses' opportunity to observe, the witnesses' motive and state of mind. Although we do not consider this instruction a model instruction to cover the defendants' contentions, we find no prejudice here.

Defendants' offered instruction no. 8 is undeniably a comment on the evidence, for it suggests that once a witness makes a pretrial photographic identification, he will not change this identification, regardless of the circumstances and even if he believes it to be mistaken. This instruction goes too far and invades the function of the jury. Whether a witness is likely or unlikely to change his mind from a previous identification, is a question for the jury, not the courts to determine as a matter of law.

Although a special cautionary instruction may be required where identification testimony is the only evidence tending to connect a defendant with commission of the act charged, there is other evidence. The doctor's appointment card found in room 109 of the Sheraton Inn clearly connects Young to the room where the theft occurred. Furthermore, the evidence admitted as to other offenses for the purpose of showing a common scheme or plan did just that. By showing that Young had checked into two other motels with a woman, and using a similar modus operandi, and that television sets were missing from each of the rooms occupied by Young, the State was able to establish that it was not merely a coincidence that a television disappeared from room 109 of

-8-

the Sheraton Inn while defendant was registered to that room. Although not specifically offered to prove the issue of identification, the evidence unquestionably helped to establish that the State charged the right person with theft of the television from the Sheraton Inn.

There is no physical evidence directly linking Strain to room 109 of the Sheraton Inn, but evidence of other offenses to show common scheme or plan, admitted in relation to the theft of the television from the Triple Crown Motel, similarly had the effect of establishing that Strain was also involved in a common scheme or plan to rid motel rooms of their television sets. The other crimes evidence effectively eliminated a claim of Strain that the only testimony linking her to the Sheraton Inn theft was that the night clerk identified her from pictures and in the courtroom as having been with defendant when he checked into room 109 of the Sheraton Inn. The evidence in relation to the Triple Crown Motel reduced the chances that a misidentification occurred in relation to placing Strain at the Sheraton Inn with Young. We thus cannot say that a cautionary instruction was required in this case.

Defendants next argue that the trial court erred in admitting testimony concerning television thefts from the Triple Crown Motel and the Shasta Motel. Before trial began, defendants tried to prevent the admission of this evidence by a motion in limine--which was denied. Defendants make several arguments. They argue first that the evidence had no probative value and was so inherently prejudicial that it denied a fair trial to defendants. Secondly, they argue that the cautionary instruction given was overly broad in that it went beyond the stated purpose of the prosecution

for seeking its admission: that it was offered to prove a common scheme or plan. Thirdly, they argue that the trial court did not comply with the requirements of State v. Just (1979), ___ Mont. ___, 602 P.2d 957, 36 St.Rep. 1649. Lastly, Strain argues that the jury was permitted to consider her involvement in the theft of the television from the Shasta Motel even though there was not a shred of evidence to connect her to this crime.

The evidence had probative value. It was offered by the State to prove common scheme or plan, and that it did. That the evidence was prejudicial cannot be denied; but all prejudicial evidence is not inadmissible evidence. The evidence also tended to prove that the disappearance of the television set from room 109 of the Sheraton Inn was not merely an unfortunate coincidence which circumstantially led to the defendants. Although not offered to prove identity, the evidence had the effect of helping to prove through circumstantial evidence and connecting the defendants with the common scheme and plan. The instruction as given recited each element of Rule 403, Mont.R.Evid. For this reason, it was overly broad, but neither defendant was shown prejudice as a result. We remind the trial courts and counsel, however, that jury instructions should be tailored to the facts of the case. The instruction also stated that the evidence could be considered to prove intent or motive. Intent or motive was not really an issue in this case. Defendants effectively conceded the thefts as their sole defense was alibi. Thus, we fail to see how defendants were prejudiced by this instruction.

The instruction effectively complied with the spirit of

State v. Just, even though there was no requirement here that it do so. We stated in Just, that it does not have retroactive effect. Furthermore, the defendants had advance notice of the State's intent to use the evidence of other offenses because that is why they filed the motion in limine. Although the trial court did not give the cautionary instruction at the time the evidence was admitted as required by Just, it did give the cautionary instruction at the conclusion of the trial. The failure to give the cautionary instruction at the time the evidence was admitted was not error. Before our decision in State v. Just, there was no such requirement. Here, the cautionary instruction given at the end of the trial was sufficient.

Strain also argues that the evidence of her involvement in the Triple Crown theft did not meet the evidentiary standard required for connection to this offense. She argues that the other crimes evidence must be proved beyond a reasonable doubt, but we have never so held. Although decided after this case, we held in State v. Just, supra, 602 P.2d 963, that the other crimes evidence must be clear and convincing. It was such. The night clerk at the Triple Crown Motel made a probable identification of Strain as the woman with Young when he rented the room at the motel. His description of her given to the police matched Strain's actual appearance. Furthermore, Strain had been identified as having been with Young on the night he checked into the Triple Crown. This was sufficient to meet the clear and convincing standard.

Nor can we agree with Strain's contention that the jury was improperly allowed to consider evidence of the television theft from the Shasta Motel and link her to that theft. The State at no time during the trial sought to

connect the defendant to the theft from the Shasta Motel. Furthermore, the jury was instructed that it was to consider the evidence against each defendant as though each were being tried alone. The court also told the jury to relate the evidence only to the defendant against whom it was received. Although not a model instruction, the jury obviously knew that it could not relate the evidence in relation to the television theft from the Shasta Motel against the defendant, for there was no evidence to establish her connection to the theft. We note, furthermore, that one instruction set forth the precise elements required to prove the defendant guilty of the theft from the Sheraton Inn. This instruction referred exclusively to the theft from the Sheraton Inn. When considering the instructions as a whole, they clearly did not permit the jury to implicate defendant in the theft of the television from the Shasta Motel. We must assume that the jury followed the instructions.

Next, Strain contends it was error for the trial court to deny her motion to sever her trial from that of Young. From an evidentiary standpoint, she argues that if she had a separate trial, the evidence of other offenses would not have been admissible at her trial. It is true that evidence concerning the theft from the Shasta Motel would not have been admissible, but the evidence concerning the theft from the Triple Crown Motel would have been admissible under the theory of a common scheme or plan. Thus, a severance would not have helped her in this regard.

Under section 46-11-404(4), MCA, it is within the trial court's discretion whether or not to grant a severance. See State v. Fitzpatrick (1977), 174 Mont. 174, 569 P.2d 383, 392. In considering whether there should be a joint trial,

the trial courts must, of course, consider several factors. Joint trials speed the administration of criminal justice, conserve judicial time, lessen the burden on prospective jurors and obviate the necessity of recalling witnesses. On the other hand, the trial court must weigh these benefits against the potential prejudice to a defendant which may arise as a result of his being tried with another defendant. There was no real threat of prejudice here which would interfere with a fair trial.

Both defendants were charged with stealing the same television set from the Sheraton Inn. The State needed the same witnesses to prove the offense against both defendants. The Sheraton night auditor positively identified Strain and Young as the couple which registered and checked into room 109 on October 14. The evidence of other offenses, with the exception of the theft from the Shasta Motel, was offered against both defendants. Both defendants raised an alibi defense and used the same witnesses to support their claim of alibi. Against this background, Strain's argument raising the specter of "guilt by association", rings rather hollow. The association with Young could have been shown even if she had a separate trial. The jury was, we note, instructed that it was to consider each defendants' guilt or innocence separately. We thus find no prejudice in trying both defendants together.

The last issue for discussion is the defendants' contention that the trial court in refusing their offered instructions cautioning the jury to disregard a witness's testimony to the effect that she believed defense counsel for the parties had intimidated her during the photo-identification session which occurred before trial. After

-13-

the witness made this statement, defense counsel moved for a mistrial but the trial court denied the motion. The court stated, however, that it would appropriately instruct the jury on this problem at the conclusion of the trial. Defendants offered two instructions but both were rejected. The trial court stated that it would give one of its own. Defendants contend that it did not give any instruction and thus the case must be reversed.

The witness was testifying in relation to the theft of the television from the Shasta Motel. Because Strain was not implicated in this theft, she argues that had her motion for severance been granted she would not have had to attend the photo-identification session. Thus, she argues that the effect of the witness's accusation of intimidation is that Strain was connected with the theft from the Shasta Motel. Young argues that failure to instruct the jury on the intimidation issue left the impression before the jury that Young had attempted to intimidate a witness or was involved in the theft, or both.

The trial court did instruct the jury on the issue, but did not really meet the problem posed by defense counsel. Its instruction stated:

> "Counsel, during the course of the trial, made reference to the question of whether or not certain witnesses had been intimidated. You are instructed that you are to disregard these statements."

The State contends that this instruction covered the issue and being that repetitive instructions need not and should not be given, the jury was properly instructed. We cannot agree that this covered the issue posed by defense counsel--for here the trial court told the jury to disregard the statements of defense counsel. Defense counsel wanted

an instruction telling the jury to disregard the testimony of the witness in relation to her claim of intimidation by defense counsel. This, notwithstanding, however, we do not find reversible error.

Defense counsel have not urged on this Court that the error was so bad that a cautionary instruction could not correct it. Rather, they contend that the trial court should have given the requested cautionary instruction, but failed to do so after stating that one would be given. We cannot accept the defendants' claims as to how they were or may have been prejudiced by the testimony not covered by a specific instruction. Every unexpected utterance of a witness does not call for a cautionary instruction. We see no prejudice to the defendants here in the failure of the court to give one.

As we have previously mentioned, there is no need to discuss the issue of the trial court designating defendants as dangerous offenders for purposes of parole eligibility. Attorneys from both sides have told this Court that the error has been rectified and defendants have now been appropriately classified as nondangerous offenders for purposes of parole eligibility.

The judgment of conviction is affirmed as to each defendant.

_____
                    Justice

We concur:

_____
          Chief Justice

_____

_____

_____
          Justices

-15-