No. 89-453

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

CHARLES M. GRAVES,

        Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Barbara E. Bell; Bell & Marra, Great Falls, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
James Yellowtail, Asst. Atty. General, Helena
Patrick L. Paul, County Attorney; J. Kim Schulke,
Deputy, Great Falls, Montana

Submitted on Briefs: Jan. 25, 1990

Decided: March 2, 1990

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

A jury empaneled in the District Court of the Eighth Judicial District, Cascade County, found Charles M. Graves, defendant, guilty on two counts of burglary in violation of § 45-6-204(1), MCA, one count of theft in violation of § 45-6-301, MCA, and one count of attempt in violation of § 45-4-103, MCA. The District Court sentenced defendant to 15 years in the Montana State Prison on each count of burglary, 10 years on the theft count and 6 months on the attempt count. All sentences were to run concurrently. The court suspended five years on each burglary count and 6 months on the attempt count subject to conditions. Defendant was designated a persistent felony offender under § 46-18-501, MCA, and sentenced to 10 additional years under the designation in accordance with § 46-18-502, MCA, to run consecutively with prior sentences imposed. Under § 46-18-404, MCA, defendant was designated a nondangerous offender for the purposes of parole eligibility and was given credit for time served. Defendant appeals.

Affirmed.

The issues raised on appeal are:

1. Whether the District Court erred in denying defendant's motion for a directed verdict of acquittal.

2. Whether the District Court erred in denying defendant's motion for a mistrial.

3. Whether the District Court erred in denying defendant's motion for a separate trial.

2

4. Whether defendant was afforded effective assistance of counsel.

5. Whether defendant's sentence was improperly enhanced under the persistent felony offender statute.

On December 16, 1988, defendant was charged by information with two counts of burglary in violation of § 45-6-204(1), MCA, one count of theft in violation of § 45-6-301, MCA, and one count of attempt in violation of § 45-4-103, MCA. The information was once amended on March 16, 1989. Daniel E. Radi, co-defendant, was similarly charged.

Counsel was appointed for defendant. On March 21, 1989, defendant's counsel filed a motion for separate trials. A similar motion had been previously filed by defendant, pro se. A hearing was conducted on the motion on March 24, 1989. The motion was denied and defendant was tried jointly with Radi on March 27, 1989.

Defendant moved for a directed verdict of acquittal at the conclusion of the State's evidence upon the contention that the evidence was insufficient. When the motion was denied, counsel for Radi gave his opening statement, which had been earlier reserved. Radi did not testify. Portions of the assertions presented in the opening were unsupported by evidence. Subsequently, defendant moved for a mistrial upon the contention that he had been implicated by Radi's opening statement. The motion was denied.

The first issue raised on appeal is whether the District Court erred in denying defendant's motion for a directed verdict of acquittal upon conclusion of the State's case. Defendant made the

3

motion upon the contention that the evidence tying defendant to the burglaries in question was insufficient in one instance and nonexistant in another. We disagree.

Section 46-16-403, MCA, provides in part:

> When, at the close of the state's evidence . . . the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant. (Emphasis ours.)

The decision of whether or not to dismiss a charge at this stage lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. See State v. Goltz (1982), 197 Mont. 361, 372, 642 P.2d 1079, 1085. Moreover, a directed verdict of acquittal may only be granted in instances where no evidence exists to support a guilty verdict. State v. Courville (Mont. 1989), 769 P.2d 44, 47, 46 St.Rep. 338, 342; State v. Matson (1987), 227 Mont. 36, 42, 736 P.2d 971, 974.

The State submitted, as evidence, the testimony of several witnesses and introduced numerous exhibits. Witnesses for the State included the first burglary victim, Arvin Otter; Officer Michael Stimac; store clerk, Gerald Byington; Detective James Olson; and the second burglary victim, Demaris Renville.

Arvin Otter testified that on December 11, 1988, at approximately 8:00 p.m., he and Janet Krantz were returning to their residence at 1401 Tenth Avenue Northwest when they observed a yellow vehicle in their driveway. As the couple approached, two men drove away in the vehicle. They observed that their garage door, which had been closed and locked when they left their house,

4

was open. The garage door and the door frame were broken. They also observed a muddy footprint on the door. In their absence, the kitchen light had been turned on, the master bedroom doors opened, and contents in a closet disturbed. Nothing had been taken.

Otter further testified that, while Krantz called the police, he followed the yellow vehicle to a nearby convenience store where he recorded the license plate number of the vehicle on the back of his hand. He observed the occupants of the yellow vehicle at that time. A white male, later identified as Radi, pumped gasoline into the vehicle while a black male, later identified as the defendant, entered the store. Otter then returned to his residence.

Police Officer Michael Stimac testified that he responded to the call from the Otter residence on the night in question. Otter told him that the suspects had been observed by Otter at a nearby convenience store. Otter relayed the license plate number that he earlier recorded to the officer. Officer Stimac called in the number and vehicle description to the police dispatcher, who broadcast the information.

Officer Stimac testified that he went to the convenience store where he spoke with the store clerk, Gerald Byington. Byington told the officer that, less than ten minutes before the officer arrived, two men in a yellow vehicle had purchased gasoline. Byington also testified to that effect as well as to the fact that defendant paid for the gasoline partially with rare coined money. Byington identified defendant at trial as the black male in the yellow vehicle who had purchased the gasoline.

5

Shortly thereafter, the yellow vehicle was stopped by the police. Officer Stimac drove to the scene of the stop. He testified that at that time he observed that the pattern on the sole of Radi's shoe was similar to the footprint on Otter's garage door. Detective Jim Olson testified, as an expert, that the footprint was indeed made by the same type of shoe Radi wore that evening. Defendant and Radi were then placed under arrest. Detective Timothy Shanks testified that Radi made post-arrest statements to him in which Radi stated that defendant had been present when Radi kicked in the door of the Otter residence.

At approximately 10:00 p.m. the same evening, the police received a report of another burglary. Demaris Renville testified that, when she and her husband returned to their residence at 101 Sixteenth Avenue Northwest that evening, they observed that their door was open, the door frame was broken and a muddy footprint was on the door. Detective Olson testified that the footprint was also made by the same type of shoe Radi wore that evening. Renville further testified that several documents and her son's coin collection were missing. A search of the yellow vehicle that defendant and Radi were arrested in revealed the coin collection. Detective Shanks also testified that Radi made a post-arrest statement to him in which Radi said that he found the coins on the frozen river.

As noted, a directed verdict of acquittal is proper only when no evidence exists to support a guilty verdict. Courville, 769 P.2d at 47. In light of the above evidence presented by the State,

6

we cannot say that no evidence existed to support a guilty verdict at the close of the State's case. There was no error.

The second issue raised on appeal is whether the District Court erred in denying defendant's motion for a mistrial. The motion was based on the opening statement of Radi's counsel that contained assertions implicating defendant, which were unsupported by evidence.

Radi's counsel made an opening statement at the conclusion of the State's case which included the assertion that Radi kicked in Otter's garage door and that defendant and Radi were in possession of the stolen coins in question but only after finding them on the frozen river. Radi's counsel called three witnesses--two of the witnesses stated that defendant and Radi were with them until approximately 6:30 p.m. on the day of the burglaries. One of the witnesses stated that nothing had been taken from the Otter residence. Radi did not testify. No testimony was given concerning the assertions set forth in the opening statement. Defendant argues that Radi's opening statement, therefore, prejudiced his case.

However, the court instructed the jury as follows:

Opening statements by attorneys are not evidence. Anything said by an attorney and not substantiated by the evidence is to be totally disregarded by the jury.

See State v. Kolstad (1975), 166 Mont. 185, 531 P.2d 1346, where we upheld such a cautionary instruction.

A motion for a mistrial is left to the discretion of the trial court and will not be disturbed absent a showing of abuse of that

7

discretion. Here, the jury was properly instructed to ignore counsel's comments when unsupported by evidence. This Court cannot assume that the jury ignored the instruction. There was no abuse of discretion.

The third issue raised on appeal is whether the District Court erred in denying defendant's motion for a separate trial. Defendant made the motion based on post-arrest statements that Radi made to Detective Shank which defendant believed would prejudice his case. Specifically, defendant complains of the statement that Radi made to Detective Shanks, an officer investigating the burglaries, that Radi and defendant found the coins on the frozen river and that defendant had been present when Radi kicked in the door of the Otter residence. Detective Shanks was expected to testify to the statements and did indeed so similarily testify as discussed previously.

Section 46-11-404(4), MCA, provides:

> If it appears that a defendant or the state is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial, the court may order separate trials . . . (Emphasis ours.)

Under the statute, it is within the trial court's discretion to grant or deny a motion for a separate trial. See State v. Strain (1980), 190 Mont. 44, 55, 618 P.2d 331, 337; State v. Fitzpatrick (1977), 174 Mont. 174, 187, 569 P.2d 383, 392. In Strain, 618 P.2d at 338, we set forth the considerations in making such a determination:

> Joint trials speed the administration of criminal

justice, conserve judicial time, lessen the burden on prospective jurors and obviate the necessity of recalling witnesses . . . the trial court must weigh these benefits against the potential prejudice to a defendant which may arise as a result of his being tried with another defendant.

While prejudice to the defendant may be inherent in joint trials, we cannot say, in this case, that defendant was so prejudiced as to warrant reversal. Here, both defendants were charged with primarily the same offenses for their acts arising from the same crimes--both were charged with one count of burglary and one count of attempt in association with the Otter residence; both were charged with one count of burglary and one count of theft in association with the Renville residence; and Radi was charged with criminal mischief in addition to his other offenses at the Otter residence. Further, here, as in Strain, the State needed the same witnesses to prove the charges against both defendants. Also, both defendants used the same story in their defense--that of finding the stolen coins on the frozen river. In light of the circumstances of the case as applied to the considerations set forth in Strain, we cannot say that the District Court abused its discretion in denying defendant's motion for a separate trial.

The fourth issue raised on appeal is whether defendant was afforded effective assistance of counsel.

Defendant asserts that, because trial counsel did not object to the rebuttal testimony of Detective Shanks regarding Radi's post-arrest statements to Shanks as discussed earlier, he was denied effective assistance. We disagree.

9

In making a determination of effective assistance of counsel, this Court has adopted the test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See State v. Boyer (1985), 215 Mont. 143, 695 P.2d 829. Under Strickland, the defendant must first show that counsel's performance was deficient and, if so, defendant must then show that the deficient performance was of such a magnitude as to have deprived defendant of a fair trial. Thus, defendant must show that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Defendant has made no showing, other than an assertion of prejudice, that failure to make an objection to the rebuttal testimony of Detective Shanks would have changed the outcome of the proceedings. Defendant's trial counsel was not constitutionally inadequate.

The last issue raised on appeal is whether defendant's sentence was improperly enhanced under the persistent felony offender statute.

A persistent felony offender is defined in § 46-18-501, MCA, which provides:

> A "persistent felony offender" is an offender who has previously been convicted of a felony and who is presently being sentenced for a second felony committed on a different occasion than the first. An offender is considered to have been previously convicted of a felony if:
>
> (1) the previous felony conviction was for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of

10

1 year could have been imposed;

(2)     less than 5 years have elapsed between the commission of the present offense and either:

(a)   the previous felony conviction; or

(b)   the offender's release on parole or otherwise from prison or other commitment imposed as a result of the previous felony conviction.

Here, defendant was previously convicted of mitigated deliberate homicide on February 19, 1980, and was paroled on that offense on October 9, 1985. Defendant was convicted of the offenses associated with the present appeal on March 29, 1989. Therefore, defendant met the definitional requirements of a persistent felony offender. Based on the designation, the District Court sentenced him to 10 additional years to be served consecutively with the sentences imposed on the convictions at issue in accordance with § 46-18-502, MCA. There was no error.

Affirmed.

_____
                                Justice

We Concur:

_____

_____

_____

_____
          Justices

11