No. 89-79

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

RICK JEROME URNESS,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena,
Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
Dorothy McCarter, Asst. Atty. General, Helena
Mike McGrath, County Attorney; Carolyn Clemens,
Deputy, Helena, Montana

Submitted on Briefs: June 30, 1989

Decided: August 31, 1989

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the First Judicial District, in and for the County of Lewis and Clark, State of Montana. The appellant, Rick Jerome Urness, was charged with burglary and sexual intercourse without consent. He was tried and convicted by a jury on both counts and was sentenced to ten years in prison, with seven years suspended on each count, the sentences to be served concurrently. In addition, the appellant was ordered to pay restitution and abide by certain conditions as ordered by the District Court. He now appeals. We affirm.

The sole issue before this Court is whether the evidence presented at trial supports the verdicts of burglary and sexual intercourse without consent.

The record indicates that at approximately 4:00 a.m., on March 24, 1988, two deputies from the Lewis and Clark County Sheriff's office were dispatched to the victim's home. Present at the home when the officers arrived were the victim and the victim's boyfriend. While taking the victim's statement, the officers found her very upset. The victim stated that she had been asleep in her bedroom and was awakened by the appellant, her estranged husband. After she and the appellant had gone into another room he physically assaulted her. She further stated that she attempted to call the police while the appellant was still in her home but the appellant ripped the telephone out of the wall, and continued to physically assault her. After the assault, the appellant left the home. The officers noticed that the lock on the side door of her house had been broken and that the victim had red marks on her arms and wrists.

The officers left the house and searched for the appellant on foot and by car. While searching for the appellant, the officers were dispatched on another call. At approximately 6:00 a.m., the Sheriff's deputies were dispatched back to the victim's house. A call was received from the victim stating that someone was outside her house. However, the officers failed to find anyone.

The victim's first statement form which she gave the Sheriff's deputies did not contain the details of a rape, only the assault. Later, on May 4, 1988, the victim completed another statement which contained more details of the offense which were testified to at trial.

At trial, the victim testified that at the time of the incident she and the appellant were legally separated and awaiting the decree of dissolution. She testified that most of their marital problems were the result of the appellant's alcohol abuse. She stated that he reacted violently to both the separation and the pending divorce. The victim further testified that she had been dating another man during the separation, and when the appellant discovered she was dating, he threatened to kill the man involved.

The victim's testimony at trial included the details of what occurred March 24, 1988. She testified that the appellant first appeared next to her bed wearing only his shirt and attempted to get into bed with her. She stated that she got the appellant out of her bedroom so he would not see her boyfriend in her bed. She further claimed the appellant became violent and pulled the phone out of the wall. She stated that despite repeated pleas for the appellant to leave, he grabbed her, mauled her and sexually assaulted her. Finally, she testified the appellant became even more angry, slammed her into the kitchen cabinets, then

3

picked her up over his head and threw her to the floor, causing her to lose consciousness.

A friend of the victim also testified that the victim had come to her the next morning extremely upset and told her what transpired the previous night. The friend took Polaroid photographs of the bruises on the victim's body but the pictures were unclear, therefore they did not attempt to photograph other marks on the victim's body. The friend testified as to the type and severity of the marks on the victim, specifically that the marks on her arms were red welts in the shape of a hand.

Others who testified at trial included the victim's boyfriend, the sheriff's deputy, the appellant's girlfriend, and a bartender from a local bar/casino. The bartender testified that the appellant entered the bar on the night of March 23, 1988, around midnight, and asked for his estranged wife, who had been employed there on a part-time basis. The bartender stated that the appellant was angry, argumentative and called the victim a "bitch, a slut and a no good wife." The bartender testified that while the appellant remained in the bar between 45 minutes and an hour, he did not appear drunk, only angry.

The appellant argues that the evidence is insufficient to support the verdicts because he testified that he was invited to the victim's home and he did not rape her. He also asserts that her version of the facts were inherently incredible, and that the weight of the evidence and the credibility of the witnesses does not support the guilty verdicts. We disagree.

The weight of evidence and credibility of witnesses is exclusively within the province of the trier of fact. It is the duty of this Court to uphold the verdict if there is substantial evidence to support the conclusion reached by the

4

trier of fact. State v. Oman (1985), 218 Mont. 260, 707 P.2d 1117; State v. Maxwell (1982), 198 Mont. 498, 647 P.2d 348. The jury heard the testimony of all the witnesses and concluded defendant was guilty of the crimes charged. There is nothing to support appellant's claim that the victim's testimony was inherently incredible. We conclude there is substantial evidence to support the jury's verdict.

Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

5