No. 89-390

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

DOUGLAS LEE LAVERDURE,

        Defendant and Appellant.

_____

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Douglas C. Anderson, Missoula, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
Paul D. Johnson, Asst. Atty. General, Helena
Robert Deschamps, III, County Attorney, Missoula,
Montana

_____

Submitted on Briefs: Dec. 7, 1989

Decided: January 19, 1990

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendant, Douglas Laverdure, was charged in the District Court for the Fourth Judicial District, Missoula County, with the felonies of aggravated burglary and criminal mischief, and misdemeanor assault. At the close of the State's case, the defense moved for directed verdict, alleging that the State had not presented sufficient evidence to sustain a verdict. The motion was denied, the jury returned a verdict of guilty on all three counts, and defendant was convicted. He appeals. We affirm.

Defendant presents the following two issues on appeal:

1. Did the District Court err in denying the defendant's motion for directed verdict?

2. Did the prosecutor's remarks during closing arguments deprive defendant of a fair trial?

Substantial evidence in the record shows: The victim, Betty Bullchild, and her two children lived in a trailer court near Frenchtown, Montana. Living in the same trailer court were defendant, who lived with Lori Wessel, and defendant's sister, Debbie Laverdure. At around 3:19 a.m. on October 4, 1988, Bullchild called the Missoula County Sheriff's Department to report that someone had thrown a rock through her trailer window. A friend of hers, Mervin Pine was with her when the rock came through the window, and when the Deputy Sheriff came to investigate. The Deputy testified that both Pine and Bullchild were drinking but appeared sober. He testified Bullchild suspected defendant was the

2

person that threw the rock through the window so the Deputy went to his trailer to investigate. He testified that the lights were all out at the defendant's trailer and that there was no one outside. He further testified that this ill-fated relationship between defendant, his sister, girlfriend and Bullchild had been going on for some time and he had personally dealt with the same group of people before on other vandalism calls.

About an hour later, the Deputy received a second phone call, this time to report that Bullchild had been assaulted and had been taken to her sister's house. The Deputy testified that Bullchild was "possibly in shock" when he talked to her and had blood all over her face and hands. Bullchild testified that defendant, Wessel and Debbie Laverdure had broken windows in her trailer and then forced their way into the house and beat her. She testified that defendant found her in her bedroom, yelled to the others "Here she is", and then beat her up. During the assault, Bullchild's two children were beneath the covers on the bed.

After investigating the trailer, the Deputy testified that he found blood on the floor in the kitchen and down the hallway and that all the windows in Bullchild's trailer had been broken out. The windows of Bullchild's car were also broken out.

Defendant personally testified but gave a completely different version of the facts. When the Deputy went to defendant's home after the second call, defendant and Wessel came to the door. The Deputy testified that defendant reported to him that somebody had broken out one of his windows. Defendant's testimony painted

3

Bullchild and Pine as the aggressors, and he denied beating up Bullchild. The Deputy testified that defendant told him that an Indian, (Mervin Pine) had thrown a rock at him, missed and broke the window. The Deputy arrested defendant, Debbie Laverdure and Wessel. Separate charges were filed and separate trials were held. At the close of the State's case against defendant, the defense moved for directed verdict, alleging that the State had not presented sufficient evidence to sustain a verdict based on the inconsistencies in the various versions of the incident as told by Bullchild. The motion was denied. Defendant was convicted and this appeal follows.

I

Did the District Court err in denying the defendant's motion for directed verdict?

Defendant contends there was not sufficient evidence to support his conviction, and that the denial of his motion for directed verdict was an abuse of discretion. He maintains that the State's case was based solely on the testimony of Bullchild and that her story varied from the time of the initial investigation through the trial.

The State urges that a district court may only grant a motion for directed verdict when:

> there is no evidence upon which the jury could base a verdict; that is, the defendant is entitled to an acquittal if reasonable men could not conclude from the evidence taken in a light most favorable to the prosecution that guilt has been proven beyond a reasonable doubt.

State v. White Water (Mont. 1981), 634 P.2d 636, 38 St.Rep. 1664.

4

The State further maintains that it is "within the province of the trier of fact to determine" which evidence shall prevail when it is conflicting, and that the jury is the exclusive judge of a witness' credibility. We agree.

When reviewing the denial of a motion for directed verdict, only substantial evidence in the record supporting the jury's finding is required. Lane v. Dunkle (Mont. 1988), 753 P.2d 321, 45 St.Rep. 686. The standard of review on issues of substantial evidence is that the conviction cannot be overturned if evidence, when viewed in a light most favorable to the prosecution, would allow a rational trier of fact to find essential elements of the crime beyond a reasonable doubt. State v. Buckingham (Mont. 1989), ___ P.2d ___, 46 St.Rep. 2102. The weight of evidence and credibility of witnesses is exclusively within the province of the jury. State v. Urness (Mont. 1989), 778 P.2d 419, 46 St.Rep. 1510. The jury heard the evidence and testimony of the witnesses and found defendant was guilty of the charges against him. Bullchild never changed her testimony as to who assaulted her. Even with the inconsistencies in her testimony, the jury found defendant to be guilty of the charges against him beyond a reasonable doubt. We hold the District Court did not err in denying the defendant's motion for directed verdict.

II

Did the prosecutor's remarks during closing arguments deprive defendant of a fair trial?

Defendant contends that the prosecution made several improper

5

comments during closing argument indicating that defendant was lying. Defendant concedes that no objection was made at trial to these comments but contends that failure to object should not necessarily bar review by this Court, citing case law from other jurisdictions.

The State maintains that the statements made were not improper and that failure to object at trial does bar review. The State further urges that even if the issue is reviewable, there was no error in the statements made. We agree.

Objections to closing arguments made for the first time on appeal are too late. State v. Pease (1986), 222 Mont. 455, 472, 724 P.2d 153, 163. Furthermore, the State's comments were nothing more than an opinion and "an opinion based on the State's analysis of evidence" does not constitute an expression of the State's personal opinion of guilt and is not prejudicial. State v. Clawson (Mont. 1989), 781 P.2d 267, 46 St.Rep. 1792. We hold the prosecutor's remarks during closing arguments did not deprive defendant of a fair trial.

Affirmed.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

6