No. 90-265

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

TOM HASKINS,

      Defendant and Appellant.

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Benjamin R. Anciaux, Attorney at Law,
Polson, Montana

      For Respondent:

          The Honorable Marc Racicot, Attorney General,
John Paulson, Assistant Attorney General, Helena,
Montana; Larry J. Nistler, Lake County Attorney

Submitted on Briefs:  May 7, 1992

Decided:  November 12, 1992

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Tom Haskins was convicted by a jury on four counts of criminal sale of dangerous drugs on November 27, 1989, in the Twentieth Judicial District Court, Lake County. He appeals from those convictions.

We affirm.

Appellant raises the following issues on appeal:

1.   Did the District Court abuse its discretion by not granting a trial continuance?

2.   Did the outrageous conduct of undercover officer Nelson require a reversal of the convictions?

3.   Did the District Court abuse its discretion by denying appellant's motion for a directed verdict?

4.   Did the District Court abuse its discretion by not granting appellant's motion for a new trial?

5.   Did the District Court abuse its discretion in not granting immunity to appellant's witnesses?

6.   Did the District Court abuse its discretion in limiting appellant's scope of cross-examination of Nelson?

7.   Did the District Court abuse its discretion in not allowing appellant to call Martin Cramer as an expert witness?

8.   Was undercover officer Nelson competent to testify?

9.   Did the State knowingly use perjured testimony?

10.  Should appellant's conviction be reversed because his conviction was based solely upon the testimony of an undercover

officer who was accountable for the same conduct for which appellant was convicted?

11. Did the State fail to provide appellant with exculpatory evidence?

12. Did the Confederated Salish and Kootenai Tribes exceed its jurisdiction in the investigation and prosecution of appellant and its employment of undercover officer Nelson?

13. Does cumulative error by the District Court warrant a new trial?

In September 1988, Robert Nelson was hired by the Confederated Salish and Kootenai Tribes ("the Tribe") as an undercover officer for the Flathead Tribal Police Department. He was to infiltrate the drug scene in Lake County and the Flathead Reservation, gain the confidence of drug users, make purchases of illegal drugs, and gather information on major drug dealers.

Nelson assumed the identity and alias of "Biker Mike" Harris, a rough, crude drifter who drove a motorcycle, wore black leather clothing, and spent his time "hanging out" at bars. While in this role, Nelson made three separate drug buys from appellant.

The first "buy" occurred on December 6, 1988. Nelson was at the Smokehouse Bar in Polson when appellant approached him and asked if he wanted to buy an eighth of an ounce of marijuana for $25. Nelson bought the bag of marijuana from appellant, left the bar, marked and secured the evidence, and delivered the marijuana later that evening to Dave Morigeau, a criminal investigator for

the Flathead Tribal Police Department who was Nelson's contact officer.

Another "buy" transpired on December 10, 1988, at the Smokehouse Bar when appellant offered to sell Nelson three tablets of Valium for a dollar. Nelson purchased the drugs from appellant and again delivered them the next evening to Detective Morigeau.

The third "buy" occurred once again at the Smokehouse Bar on December 13, 1988. Nelson agreed to purchase another eighth of an ounce of marijuana from appellant. Appellant stated that he did not have any marijuana with him, but that his wife Sherry would bring the drug with her when she came to the bar later in the evening. Nelson witnessed the appellant's wife enter the bar and give something to appellant. Appellant then approached Nelson and gave him some marijuana. Nelson delivered the substance to Detective Morigeau on December 15, 1988.

The last transaction occurred on January 22, 1989. Appellant had borrowed $10 from Nelson two days earlier and agreed to pay Nelson back with some Darvon and Darvocet pills. This occurred in downtown Polson. Nelson delivered the pills to Detective Morigeau later in the evening. Apparently, a few weeks later, Nelson's cover was "blown" and his effectiveness as an undercover agent in the drug community ceased.

On April 11, 1989, the Lake County Attorney filed an information charging appellant with four counts of criminal sale of dangerous drugs. After several continuances, trial commenced on

4

November 20, 1989, and on November 27, 1989, the jury found appellant guilty on all four counts. On December 20, 1989, appellant was sentenced to four consecutive prison terms of 20 years, with 15 years suspended for each term. The court entered its written judgment and sentence on December 21, 1989.

On December 27, 1989, appellant filed a motion for a new trial which was denied by the District Court on February 8, 1990. On March 7, 1990, appellant filed his notice of appeal. On February 7, 1991, this Court ordered that the appeal be stayed and the case remanded to the District Court for its consideration of a second motion for a new trial based on newly discovered evidence which was filed by appellant while the appeal was pending. An evidentiary hearing was held on April 29, 1991, and on June 12, 1991, the court denied the motion. Appellant appeals from this order.

At the outset, the State contends that several issues raised by appellant are not properly before this Court because appellant failed to file a timely appeal pursuant to Rule 5(b), M.R.App.P. The State acknowledges that appellant's appeal was timely with respect to the District Court's denial of his first motion for a new trial, entered on February 8, 1990. However, the notice is not timely with respect to the judgment. We have stated that this Court is without jurisdiction to hear an appeal where notice of an appeal is filed more than 60 days following the entry of judgment. State ex rel. Graveley v. District Court (1978), 178 Mont. 1, 582

5

P.2d 775. We conclude that the proper focus of this appeal should be limited to the District Court's denial of appellant's motions for new trial, and that we will only discuss the issues raised in those motions. Therefore, this Court will not discuss issues 7, 8, 10, 12, and 13.

## I.

Did the District Court abuse its discretion by not granting a trial continuance?

When reviewing a denial of a motion for continuance, this Court determines whether the district court abused its discretion. State v. LaPier (1990), 242 Mont. 335, 790 P.2d 983. Motions for continuances are to be addressed at the discretion of the district court and are to be considered in light of the diligence shown by the movant. Section 46-13-202(3), MCA.

In this case, appellant requested a third trial continuance on the grounds that the transcripts of the suppression hearings in a related criminal case, and the report of the private investigator, had not been provided to him and would not be available in time to review and conduct any meaningful investigation into the conduct of undercover officer Nelson.

Defense counsel had approximately five months between the time of appointment and the time of trial to prepare a defense. The District Court had granted two previous continuances on behalf of the defense. Appellant has not shown that even with due diligence he would not have been able to obtain the information in the

6

special investigation report prior to trial by either reinterviewing Nelson or interviewing the private investigator. Nor did the appellant file an affidavit showing the materiality of the evidence expected to be obtained during the continuance. State v. French (1988), 233 Mont. 364, 760 P.2d 86. We hold that the District Court did not abuse its discretion in denying appellant a third trial continuance.

## II.

Did the outrageous conduct of undercover officer Nelson require a reversal of the convictions?

Appellant raises two subissues under this argument. First, appellant contends that Nelson engaged in various illegal activities while working as an undercover agent, and as a result, appellant's conviction should be overturned. Second, appellant contends that as a result of Nelson's felony conviction in the state of Washington approximately 20 years ago, Nelson was ineligible to be hired by the Tribe and Lake County as a law enforcement officer.

The United States Supreme Court has recognized that there may come a day when:

> [T]he conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.

United States v. Russell (1973), 411 U.S. 423, 431-32.

7

The existence of police misconduct as a violation of due process is a question of law for the court to decide. United States v. Ramirez (4th Cir. 1983), 710 F.2d 535, 539. As a defense, it is a close relative to entrapment and is usually invoked where involvement of undercover agents and informers in contraband offenses reaches a point as to completely prevent a conviction of a predisposed defendant as a matter of due process. Ramirez, 710 F.2d at 539. Although the due process defense is potentially broad, it is limited. Ramirez, 710 F.2d at 539. The protection of the Due Process Clause of the Fifth Amendment comes into play only "when the Government activity in question violates some protected right of the *defendant*." Hampton v. United States (1976), 425 U.S. 484, 490. The Hampton court concluded that:

> If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provision of state or federal law.

Hampton, 425 U.S. at 490.

In this instance, appellant has failed to show how Nelson's alleged illegal activities violated appellant's constitutional rights relating to the crimes charged. Appellant was not involved in any of the incidents during which Nelson may have violated the law. The Lake County Attorney properly filed misdemeanor complaints against Nelson for shooting from or across a road or highway right-of-way and knowingly purchasing alcohol for a person

8

under 21 years of age. Appellant also contends that Nelson's prior felony conviction constitutes outrageous conduct.

In 1974, Nelson pled guilty to a charge of grand larceny in the state of Washington. He later petitioned and received an order of dismissal. The order of dismissal states that Nelson was permitted to withdraw his guilty plea, that the plea of guilty was not entered, and that the cause was dismissed. The order also provides that Nelson was released from all penalties and disabilities resulting from the filing of the charge. In 1983, standard background criminal investigations for hiring conducted by the Montana Department of Justice revealed no criminal record. Subsequent checks in 1989 and 1991 also showed no criminal history for Nelson. Nelson had worked for the Washington police and the Drug Enforcement Agency. Lake County and the Tribe were fully justified in relying upon the absence of any criminal record in hiring Nelson.

In addition, appellant knew of the felony conviction before trial commenced. The State filed a motion in limine to preclude any evidence of Nelson's criminal history. In his brief, appellant cites to various federal statutes and regulations regarding hiring. They are not applicable. Nelson was hired by the Tribe and paid from tribal funds. As a federal judicially recognized sovereign nation, the Tribe has its own inherent hiring authority and Nelson was properly represented to the jury as a tribal officer. We hold

that the conduct of undercover officer Nelson does not warrant a reversal of the conviction.

## III.

Did the District Court abuse its discretion by denying appellant's motion to dismiss?

At the close of the State's case, appellant moved for a directed verdict which the District Court denied. Section 46-16-403, MCA (1989), provides that a district court may dismiss an action against a defendant when:

> [A]t the close of the state's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant.

We have construed this statute to mean that "a verdict of acquittal may be directed in favor of the defendant *only* if *no evidence* exists upon which to base a guilty verdict." State v. Christofferson (1989), 238 Mont. 9, 11, 775 P.2d 690, 692. A directed verdict is warranted if reasonable men could not conclude from the evidence taken in light most favorable to the prosecution that guilt has been proven beyond a reasonable doubt. State v. Laverdure (1990), 241 Mont. 135, 138, 785 P.2d 718, 721. The decision to direct a verdict lies within the sound discretion of the district court and we will not overturn such a decision unless an abuse of discretion is shown. Christofferson, 775 P.2d at 692. Appellant argues that Nelson's testimony was so inherently incredible that no reasonable person ought to accept it as true. Appellant also argues that his

alibi witnesses established that he was not at the alleged crime scene on January 22, as Nelson testified, but was judging a pool tournament. We point out that if evidence conflicts it is well within the province of the jury to resolve the dispute.

In this instance, Nelson's testimony relating to appellant's involvement in the crimes charged was consistent. The jury chose to believe Nelson, not appellant's alibi witnesses. We hold that the District Court did not abuse its discretion in denying appellant's motion for a directed verdict.

IV.

Did the District Court abuse its discretion by not granting appellant's motion for a new trial?

To determine whether a new trial is warranted on the basis of newly discovered evidence, this Court established three criteria which must be met:

> 1.   The evidence must have come to the knowledge of the applicant since the trial;
>
> 2.   That it is not through want of diligence that it was not discovered earlier;
>
> 3.   That it is so material that it would probably produce a different result upon another trial.

State v. DeMers (1988), 234 Mont. 273, 278, 762 P.2d 860, 863-64. The granting and denying of a new trial rests within the sound discretion of the district court and this Court will not overturn that decision unless the district court abuses its discretion. DeMers, 762 P.2d at 864. In this instance, appellant claimed that

11

upon receiving the investigator's report after the trial, he only then discovered that Nelson had a prior felony conviction affecting his officer status. However, the record reveals that appellant knew of the felony conviction as early as August 9, 1989. In addition, the prior felony conviction became the subject of a pretrial motion in limine. By exercising due diligence through interviewing Nelson for a second time, or through interviewing the investigator, appellant could have discovered Nelson's felony conviction. Moreover, the discovery of the conviction was not material to the case and would not have affected the outcome. We hold that the District Court did not abuse its discretion in denying appellant's motion for a new trial.

V.

Did the District Court abuse its discretion in not granting immunity to appellant's witnesses?

Section 46-15-331, MCA (1989), states that the district court, upon the request of the prosecution or defense counsel, "may require a person to answer any question or produce any evidence that may incriminate him." It is at the discretion of the district court to grant immunity to counsel's witnesses.

In this instance, appellant requested that the District Court grant immunity to 16 witnesses. The court denied the motion, but stated that it would not compel incriminating testimony. Appellant offered no proof concerning the testimony he expected to elicit from the witnesses. He only explained to the court that "a lot of

12

witnesses" would testify about incriminating matters and would refuse to testify without immunity concerning Nelson's activities during the undercover investigation. The record shows that the court was given almost no information regarding the testimony of appellant's witnesses. Even with the denial, eight of appellant's witnesses testified concerning Nelson's, as well as their own, use of marijuana during the investigation. We hold that the District Court did not abuse its discretion in denying immunity to appellant's witnesses.

## VI.

Did the District Court abuse its discretion in limiting appellant's scope of cross-examination of Nelson?

In its order on the motion in limine, the District Court ruled that appellant was prohibited from introducing Nelson's criminal history or record, specifically including the 1974 felony conviction in Washington. The District Court permitted appellant to introduce evidence of Nelson's alleged criminal activities and wrongful conduct during the time period relevant to the charges against appellant. Appellant contends that he was denied his right to confront and cross-examine witnesses. Specifically, he argues that he was not allowed to question Nelson on his prior criminal conviction, on Nelson's relationship with appellant's wife, and Nelson's criminal acts outside the time frame established by the court.

13

Rule 609, M.R.Evid. (1989), states that "[f]or the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is not admissible." We have upheld this prohibition because of the inherent prejudicial effect of a witness's criminal history on the jury's deliberative process and its low probative value regarding the credibility of a witness. Sloan v. State (1989), 236 Mont. 100, 104-05, 768 P.2d 1365, 1367-68.

Appellant also contends that the court overly restricted his cross-examination relating to Nelson's relationship with appellant's wife as a possible motive for Nelson's accusations against appellant. At trial, defense counsel did ask Nelson whether he had "hit on" or propositioned appellant's wife. Nelson stated that he had not. The State objected on relevancy grounds to appellant's next question concerning the proposition, and the objection was sustained by the court.

The District Court afforded appellant a threshold level of inquiry in his effort to present evidence of bias or motive to testify falsely. State v. Gommenginer (1990), 242 Mont. 265, 790 P.2d 455. With the exception of one witness's reference that Nelson would be cute or fresh to women, nothing in the record indicates that this line of questioning was based upon fact. Defense counsel did not even question appellant's wife, Sherry Haskins, about the alleged proposition when she testified for the defense. Rule 402, M.R.Evid., allows the district court to exclude

irrelevant evidence, and in this instance the District Court properly limited defense counsel's speculative inquiry into this area.

Finally, appellant argues that the District Court did not permit him to question Nelson about his use of pills or the extent of Nelson's efforts to stay in character and protect his cover. These questions were asked during recross-examination. The State objected on the basis that the questions went beyond the scope of redirect, and the District Court sustained the objection. Rule 611, M.R.Evid. (1989), grants the district court discretion to limit questions on recross-examination to those new matters brought out during redirect. We hold that the District Court was well within its discretion to limit appellant's scope of cross-examination of Nelson.

As a result of our holding above, we conclude that the State did not knowingly use perjured testimony from Nelson, or that it withheld exculpatory evidence.

We affirm.

_Williams Hunter_
Justice

15

We concur:

_____
John Conway Harrison

_____
P.C. [signature]

_____
[signature]

_____
[signature]
Justices

16