NO.  93-165

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

THE STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

MIKE MUMMEY,

       Defendant and Appellant.

FILED

MAR 17 1994

CLERK ...
... OF MONTANA

APPEAL FROM:   District Court of the Seventeeth Judicial District,
               In and for the County of Blaine,
               The Honorable Leonard H. Langen, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

         Patrick F. Flaherty, Great Falls, Montana

       For Respondent:

         Honorable Joseph P. Mazurek, Attorney General:
         John Paulson, Assistant Attorney General, Helena,
         Montana

         Donald Ranstrom, County Attorney, Chinook, Montana


                   Submitted on Briefs:  December 2, 1993

                          Decided:  March 17, 1994

Filed:

                     Clerk

Honorable Dorothy McCarter, District Judge, delivered the Opinion of the Court.

Mike Mummey (Defendant) appeals from Blaine County District Court orders denying his motions for directed verdict, and for judgment notwithstanding the verdict after his conviction for felony assault. We affirm.

On December 9, 1991, Raymond Miller, Merle Darling and Wade Hillier drove to Montana from their home in Canada to visit friends and purchase some equipment for a hot water tank. When they arrived in Harlem, Montana, they stopped at the Nite Train Bar to visit with Miller's friends and have some drinks.

A few blocks from the Nite Train Bar was Kennedy's Bar, where Defendant was drinking with Joe Mohar and Louis "Puddy" Mount. Defendant and Mohar became disruptive and after being rebuked by the bartender, they left Kennedy's and proceeded to the Nite Train Bar.

At the Nite Train Bar, Defendant noticed the three Canadian men and made a derogatory comment to the bartender, asking if the men were "some of your pig farmer friends from up north." Mohar saw one of the Canadians, Wade Hillier, talking to three local women. Mohar went over to Hillier, shoved him away and, using profane language, told him to get out of the way and leave his women alone. Raymond Miller went over to Mohar and asked what the problem was. Mohar replied with profanity, telling Miller that he

and his Canadian friends should get out of the bar and out of the country.

The owner of the bar intervened and told Mohar to leave. Mohar yelled to Defendant that he did not like Canadians, and yelled to Miller that he would take him outside and fight him. Mohar then left the bar. Defendant purchased some beer and a bottle of liquor and also left the bar.

Miller remained in the bar for about five minutes, then left. Merle Darling, who had not witnessed the shoving incident and the exchange of words between Mohar and Miller, assumed that Miller was going to Kennedy's, and decided to go see what was happening there. When he opened the front door of the Nite Train Bar to leave, Darling saw Miller lying on the street on his back, being kicked by Defendant and Mohar. Darling charged into Defendant and Mohar in an attempt to get them off Miller. Darling was knocked to the ground by a blow and then was kicked four or five times in the head. One kick struck him in the mouth. When the assailants left, Darling got up, checked Miller, and returned to the bar to get help.

Darling was cut and bruised, and his false teeth were shattered. Miller suffered severe facial injuries, including injuries to his eyes. As a result of the severe beating, Miller suffered a memory lapse and could not recall the events that led to his injuries. Darling testified that he was hit in the teeth with

what felt like boots, but he did not see whose boots they were. Defendant testified that he wore tennis shoes that night.

During the trial, Ruddy Mount and Defendant both testified that Defendant did not participate in the beating of Miller. Mount testified that Defendant attacked Darling as he walked out of the bar. Defendant testified that he intercepted Darling in order to keep him out of the fight; he stated that Mount kicked Darling and he, Defendant, attempted to stop Mount from doing so.

Defendant was charged with two crimes: aggravated assault (Count 1) upon Raymond Miller, and felony assault (Count 2) upon Merle Darling. The case proceeded to trial and, at the close of the State's case, Defendant moved for a directed verdict as to both counts. The motion was denied. On September 23, 1992, the jury returned its verdict, finding Defendant not guilty of aggravated assault and guilty of felony assault. Defendant moved for judgment notwithstanding the verdict. That motion was also denied. At the sentencing hearing the District Court deferred imposition of sentence for three years and placed Defendant on probation, subject to certain conditions.

There are two assignments of error on appeal:

1. That the court erred in refusing to grant the motion for directed verdict; and

2. That the court erred in refusing to grant the motion for judgment N.O.V.

The issues raised in these motions are twofold:

4

1.   Whether the tennis shoes worn by Defendant were a weapon under the assault statute; and

2.   Whether the language in the felony assault count of the information precluded the jury from convicting Defendant of that count after acquitting him of aggravated assault.

Standards of Review

Section 46-16-403, MCA, permits the district court to dismiss a criminal action at the close of the prosecution's case when the evidence is insufficient to support a finding or verdict of guilty. This Court has construed this statute to mean that "'a verdict of acquittal may be directed in favor of the defendant *only* if *no evidence* exists upon which to base a guilty verdict.'"  State v. Haskins (1992), 255 Mont. 202, 210, 841 P.2d 542, 547 (quoting State v. Christofferson (1989), 238 Mont. 9, 11, 775 P.2d 690, 692) (emphasis in original).  The Court has repeatedly stated that a defendant is entitled to an acquittal if reasonable persons could not conclude from the evidence taken in the light most favorable to the prosecution that guilt has been proven beyond a reasonable doubt.  See State v. Doney (1981), 194 Mont. 22, 29, 636 P.2d 1377, 1381; Haskins, 841 P.2d at 547 (citing State v. Laverdure (1990), 241 Mont. 135, 785 P.2d 718).

The standard of review for a trial court's refusal to grant a defendant's motion for a directed verdict of acquittal is whether, after reviewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This is the same standard of review used by the Court to determine the sufficiency of the evidence supporting a conviction. State v. Bower (1992), 254 Mont. 1, 6, 833 P.2d 1106, 1110.

The decision to direct a verdict at the close of the State's case lies within the sound discretion of the trial court and is not disturbed on appeal absent an abuse of that discretion. See State v. Graves (1990), 241 Mont. 533, 535, 788 P.2d 311, 313.

The statutes governing practice and procedure in criminal proceedings do not provide for judgment notwithstanding the verdict. Cf. Rule 50(b), (c), (d), M.R.Civ.P. However, § 46-16-702, MCA, permits a defendant to move for a new trial following a verdict of guilty, and under this statute, the district court may modify or change the verdict by finding the defendant guilty of a lesser included offense or finding the defendant not guilty. Defendant's motion for judgment notwithstanding the verdict will be deemed one made under that section.

The standard of review of a district court's ruling on a motion for new trial is whether the district court abused its discretion. State v. Gambrel (1990), 246 Mont. 84, 91, 803 P.2d 1071, 1076.

Issue 1.

Defendant argues that the State failed to prove with sufficient evidence that his footwear was a weapon under the felony

6

assault statute. In chambers, while arguing the motion for directed verdict, Defendant conceded that he had been fighting with and had committed "a technical assault" on Merle Darling, but argues that the State had failed to identify the weapon. He further argues that the tennis shoes, which Defendant wore during the assault, are not weapons as defined in the statute because they are incapable of producing serious bodily injury.

Section 45-2-101(71), MCA, defines "weapon" as "any instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." One of the elements of felony assault upon Darling -was use of a weapon. Section 45-5-202(2)(a), MCA. "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ. It includes serious mental illness or impairment. Section 45-2-101(59), MCA.

Whether a weapon was used in the commission of a criminal assault is a factual element to be determined by the jury. The test for sufficiency of the evidence with respect to a factual element of a crime is whether any rational trier of fact could have found that element beyond a reasonable doubt. State v. Evans (1991), 247 Mont. 218, 224, 806 P.2d 512, 516.

The statute defining "weapon" for purposes of the assault statutes must be construed according to the plain meaning of the

language therein.  See State ex rel. Woodahl v. District Court (1973), 162 Mont. 283, 292, 511 P.2d 318, 323.  When the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe.  Hammill v. Young (1975), 168 Mont. 81, 85-86, 540 P.2d 971, 974.  The language of § 45-2-101(71), MCA, is broad enough to include any instrument that although not dangerous per se may be considered a weapon, depending on its manner of use and the circumstances in which it is used.

Many jurisdictions have adopted this approach, when considering shoes as weapons.  See  Jones v. Commonwealth (Ky. 1953), 256 S.W.2d 520 (shoes may be regarded within the term "deadly weapon" when employed in such a manner as may be reasonably calculated to produce great bodily injury or death); Medlin v. United States (D.C. Cir. 1953), 207 F.2d 33, cert. denied, (1954) 347 U.S. 905 (shoes are dangerous weapons when they inflict serious injury): United States v. Barber (D. Del. 1969), 297 F.Supp. 917, aff'd, (3rd Cir. 1971), 442 F.2d 517;  State v. Born (Minn. 1968), 159 N.W.2d 283; Hay v. State (Okla. Crim. App. 1968), 447 P.2d 447 (shoes are not dangerous weapons per se but the manner of their use might make them so); Johnson v. State (Miss. 1970), 230 So.2d 810; People v. Hale (Mich. Ct. App. 1980), 292 N.W.2d 204, vacated on other grounds, (Mich. 1980) 298 N.W.2d 421; State v. Wraggs (Mo. Ct. App. 1973), 496 S.W.2d 38, cert. denied, (1974) 414 U.S. 1160.

In Commonwealth v. Polydores (Mass. Ct. App. 1987), 507 N.E.2d

775, rev. denied, (Mass. 1987) 509 N.E.2d 1202, the defendant, wearing running shoes, kicked the victim repeatedly, causing a fractured nose, black eyes and bruises. The court held that the evidence at trial was sufficient to support a conviction of assault with a dangerous weapon. In State v. Munoz (La. Ct. App. 1991), 575 So.2d 848, cert. denied, (La. 1991), 577 So.2d 1009, the defendant kicked the victim while wearing tennis shoes, causing serious injuries. The tennis shoes qualified as a dangerous weapon within the meaning of the aggravated battery statute.

Kicking with a tennis shoe clad foot presents a question for the jury whether Defendant employed a weapon, under all the circumstances surrounding the incident. See e.g. Hale, 292 N.W.2d at 205; Johnson, 230 So.2d at 811; Polvdores, 507 N.E.2d at 776. To rule that a tennis shoe is not a weapon as a matter of law would deprive the jury of this important fact-finding function. The inquiry here is not whether the tennis shoe is a weapon per se, but whether, under the circumstances of the assault and the manner in which it was used, it was a weapon. Accordingly, the State was required to prove beyond a reasonable doubt that the ordinarily harmless footwear was used in such a way that rendered it readily capable of producing death or serious bodily injury.

This holding is consistent with our prior decisions addressing weapons. In State v. Evans (1991), 247 Mont. 218, 806 P.2d 512, we affirmed the jury finding that a stun gun was a weapon. In State v. Howard (1981), 195 Mont. 400, 637 P.2d 15, we upheld a finding

9

that pantyhose was a weapon where it was used to strangle the victim. In State v. Klemann (1981), 194 Mont. 117, 634 P.2d 632, a glass ashtray was properly found to be a weapon, when the victim was struck on the head with it repeatedly. In State v. Matson (1987), 227 Mont. 36, 736 P.2d 971, a pellet gun qualified as a weapon when the defendant pointed it at the victims and threatened them.

Defendant refers to State v. Deshner (1977), 175 Mont. 175, 573 P.2d 172, in urging us to declare that a tennis shoe is not a weapon. In that case, the victim was struck in the face with a projectile while he was in his car. He testified that he was not aware of exactly what had hit him and was not sure if the projectile had been propelled by a slingshot; nor did he know who flung the projectile at him. The defendant stated that he had shot at the victim's car, but was not sure that he had actually struck the victim. No other witnesses were called to show that the victim had been struck by a projectile fired from a slingshot or that defendant had fired a projectile at the victim, even though there were two other individuals in the victim's car at the time of the incident. Neither the slingshot nor the projectile was introduced into evidence. The record was barren of any testimony that the slingshot-projectile combination was in fact a weapon capable of producing death or bodily injury, and the victim suffered only a bruise. We held that the testimony when taken as a whole failed to prove that the assault was committed with a weapon "capable of

10

being used to produce death or serious bodily injury." Deshner, 573 P.2d at 174.

In the instant case, the victim, Merle Darling, testified that he was kicked repeatedly with what he thought was a boot, because it felt like one. Defendant testified that he wore tennis shoes that night, and introduced them into evidence. Darling sustained various facial injuries, including shattering of his dentures, cutting of his gums and the inside of his lip, cuts above the eyes and behind the ears, and bruised arms, shoulders and ribs. The jury had sufficient evidence, therefore, to find that Defendant had kicked Darling with a tennis shoe, and that based on the circumstances of the assault and the resulting injuries sustained by Darling, the tennis shoe was readily capable of causing serious bodily injury.

Issue 2

Defendant asserts that the jury's verdict as to the felony assault count should be reversed, because the language in that count referred to the occurrence in the aggravated assault count, of which he was acquitted. Specifically, Defendant asserts that the jury verdict of guilty on Count 2 but not guilty on Count 1 is inconsistent because the language in Count 2 describes the footwear as the same used in the assault against Raymond Miller in Count 1.

The information contained the following language, which was included in Jury Instruction Number 5:

11

<u>Count II</u>

The Defendant, on or about December 9, 1991, committed the offense of Felony Assault, a Felony, in that he did purposely or knowingly cause bodily injury to another with a weapon, to-wit: Defendant knocked Merle Darling to the ground and kicked him in the head with footwear which caused pain, bruising, contusions and broken teeth to Merle Darling. Said footwear was the same as used on Raymond Miller and was readily capable of being used to produce death or serious bodily injury as evidenced by injuries caused to Raymond Miller as set forth in Count I.

During their deliberations, the jury presented questions to the court, one of which was:

If the defendant is found guilty on Count II do we have to find him guilty on Count 1? Since the bottom line on Court's #5 page 1 indicates that the footwear was the same as used on Raymond Miller.

ANSWER: No.

It is well settled that the only purpose of an information is to let the defendant know what he is charged with having done, so that he can prepare his defense. State v. Straight (1959), 136 Mont. 255, 263, 347 P.2d 482, 487; State v. D.B.S. (1985), 216 Mont. 234, 238, 700 P.2d 630, 633. Incorporating the information in instructions to the jury is not error where it contains basically statutory language that applies to the crime of which the defendant is charged. State v. Riley (1982), 199 Mont. 413, 430, 649 P.2d 1273, 1281-82; State v. McKenzie (1980), 186 Mont. 481, 507-08, 608 P.2d 428, 444-45, <u>cert. denied,</u> (1980) 449 U.S. 1050.

The language of the information that was incorporated into Instruction 5 did not redefine the elements of the crime of felony

12

assault, nor did it change the nature of the offense or the burden of proof. It merely contained surplus language about the footwear used by Defendant. That same instruction specifically instructed the jury that each count in the information charged a distinct offense, that they must decide each count separately, and that the Defendant may be found guilty or not guilty of any or all of the offenses charged. It also enumerated the individual elements of each of the offenses charged, as well as the applicable definitions.

This Court has previously held that each instruction must be viewed in the context of the overall charge. If all instructions reviewed as a whole, fairly and accurately present the case to the jury, the fact that one instruction, standing alone is not as full as it might have been is not reversible error. Riley, 649 P.2d at 1281.

The jury's question concerning the surplus language in Count 2 indicated some confusion which was adequately cleared up by the court in its answer. In view of all of the instructions given to the jury, the surplus language contained in Count 2 of the information did not invalidate the verdict.

Defendant refers to State v. Later (Mont. 1993), 860 P.2d 135, 50 St.Rep. 1099. In that case, the defendant was charged with official misconduct, but the information charged the crime under the wrong statutes. The district court submitted an instruction to the jury that quoted the language of the correct statute. We held

13

that this amendment of the information was reversible error, because the change was substantive to the charge, and thus deprived the defendant of adequate notice of the crime charged and of the opportunity to defend himself.  Later, 860 P.2d at 137.  In the instant case, the language in Count 2 simply refers to footwear used against another victim as described in Count 1.  It does not substantively affect the elements of the crime of felony assault.

In his reply brief, Defendant raised the issue of whether the judge's answers to jury questions during the deliberations were prejudicial and inaccurate.  This issue was raised for the first time in Defendant's reply brief, and is thus not proper for consideration.  Rule 23, M.R.App.P.

In summary, we conclude that the issue of whether the tennis shoe used by Defendant in the assault in Count 2 was a weapon was properly a question of fact for the jury. The jury's finding that a weapon was used in the assault was supported by the evidence. The surplus language in Count 2, which was given to the jury in an instruction, did not invalidate the jury's verdict of guilty as to that count.

The judgment of the District Court is affirmed.

Hon. Dorothy McCarter, District
Judge, sitting in place of
Justice James C. Nelson

14

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

Justice Terry N. Trieweiler dissenting.

This case involves nothing more than a barroom argument between two drunks which resulted in a fight outside the bar between defendant and his accuser. No *one* was seriously injured in the fight, and the purported victim was, by his own admission, the aggressor. Yet, as a result of that fight, defendant stands convicted of a felony for which the potential penalty is ten years in prison and a $50,000 fine.

While the historical effort to bring law and order to the west is commendable, this case is a classic example of judicial acquiescence in prosecutorial overkill and should be a cause of alarm to all Montana citizens. This "case of the deadly sneaker" merits further discussion.

I dissent from the majority opinion for two reasons: First, the State produced insufficient evidence to prove felony assault pursuant to § 45-5-202(2)(a), MCA, and *our* prior decision in *State v. Deshner* (1977), 175 Mont. 175, 573 P.2d 172. Second, if what constitutes a "weapon" for the purpose of satisfying the elements of the felony assault statute can be established on a case-by-case basis after the act complained of was committed, and can be construed so broadly as to include a tennis shoe, then I believe the statute under which defendant was convicted is unconstitutional in violation of Article I, Section 10, of the United States Constitution which prohibits *expostfacto* laws, and is impermissibly

16

vague in violation of the Due Process Clauses of the Federal and State Constitutions.

Other than the nature of the alleged "weapon" that was used by defendant, the facts in this case are practically indistinguishable from the facts which we held required reversal of the defendant's conviction in *Deshner*. In that case, the defendant was charged with aggravated assault under the same provisions which now form the felony assault statute. In that case, the victim testified that while he was driving his car he was struck in the jaw by some kind of projectile. He was not aware of exactly what had hit him, nor who had flung the projectile. The only evidence regarding his physical condition was that he observed blood and admitted himself to the emergency room at the hospital. The only evidence connecting the defendant and a "weapon" to the incident was testimony from an investigating officer to the effect that the defendant confessed to him following the incident that he fired two shots with a slingshot at the victim's automobile.

On appeal, Deshner contended that there was no proof that the slingshot which was used was capable of producing death or serious bodily injury, and therefore, proof was absent on an essential element of the crime of aggravated assault. That is exactly the nature of the proof which was required to convict defendant of felony assault in this case, and which was not produced. As the basis for reversing the defendant's conviction in the *Deshner case*, this Court stated that:

17

> The cumulative effect of the testimony offered at trial, taken in the light most favorable to the state does not prove that the assault was committed with a weapon "capable of being used to produce death or serious bodily injury." Even if we assume that the use of a slingshot was adequately proven, the record is barren of any testimony that the slingshot-projectile combination was in fact a weapon capable of producing death or bodily injury. No evidence was presented concerning the size, weight or shape of the projectile which struck the victim nor the velocity at which the slingshot was capable of propelling such projectile. The evidence indicated that VanDenBos received a bruise on the jaw requiring no hospitalization and that no bones were broken. Such proof falls far short of establishing an assault with a weapon capable of being used to produce death or serious bodily injury as required by statute.

*Deshner*, 573 P.2d at 174.

In this case, the nature of proof was remarkably similar. There were only three witnesses to the altercation which formed the basis for the felony assault charge against defendant. They were the participants in the altercation, Merle Darling and defendant, and Louie Mount, who testified after receiving immunity from prosecution. Mount's and defendant's accounts of what happened were substantially different than Darling's. They described an altercation with both men rolling around on the ground flailing at each other with both arms and feet. While the jury was entitled to disregard the testimony of Mount and defendant, they apparently gave it some weight because defendant was acquitted of any assault on Raymond Miller. That acquittal was inconsistent with the testimony of Darling, and consistent with testimony from Mount and defendant.

However, even if Darling's testimony is accepted in its entirety, it provided *no* more proof than was established by the State in *Deshner.*

Darling testified that prior to the altercation, he had consumed nine or ten beers that evening, but was not sure because he was not counting. When he came out of the Nite Train Bar he alleged that he charged defendant and another to "clean them characters off of Raymond." However, when he got to the fight scene someone knocked him down, although he did not know who. He testified that after he was on the ground he believes he was kicked by two people, but admitted that after being knocked down he was not 100 percent clear of what happened.

He reported sustaining bruises, several lacerations, and that his false teeth were shattered, although he did not know who knocked his teeth out. He testified that he did not feel any of the injuries he sustained amounted to serious bodily injury and did not report ever being admitted to the hospital for observation or treatment.

He did not recall having any altercation with Louie Mount, even though Mount admitted kicking Darling's arm free from defendant in order to extricate defendant from the fight. He was not sure what kind of footwear anyone was wearing.

Defendant did offer into evidence the tennis shoes he stated he was wearing that evening, but there is no indication in the record of their size, weight, composition, or how they were more dangerous than a bare foot--if they were.

19

As in *Deshner,* the above evidence falls "far short of establishing an assault with a weapon capable of being used to produce death or serious bodily injury," and therefore, falls far short of the proof required to convict under Montana's felony assault statute. Certainly any injuries sustained by Darling's companion, Raymond Miller, cannot support defendant's conviction. Furthermore, defendant was acquitted of any assault on Miller.

*Deshner* has never been reversed nor modified. The *Deshner* decision makes good sense. It should control the outcome in this case.

Furthermore, but just as importantly, Montana's felony assault statute provides no notice to anyone that an article of clothing as apparently harmless as a tennis shoe, when involved in what would appear to be a simple misdemeanor assault, would increase the gravity of the offense from *one* that would normally be punishable by a maximum fine of $500 and imprisonment for six months under § 45-5-201, MCA, to a felony punishable by a fine of up to $50,000 and imprisonment for a period of up to ten years. Because no rational person would understand that the consequence of his conduct is so markedly different depending on whether he kicked someone with a bare foot or a foot covered with a thin layer of canvas, any statute which allows such unexpected consequences is impermissibly vague, and therefore, void because it violates the Due Process Clauses of the Montana and United States Constitutions.

20

We have previously held that a statute can violate the Fourteenth Amendment of the United States Constitution, and Article II, Section 7, of the Montana Constitution, if it is unconstitutionally vague. *State v. Woods* (1986), 221 Mont. 17, 22, 716 P.2d 624, 627.

> The issue of **"vagueness"** with regard to a statute or ordinance can be raised in two different connotations: (1) whether it is so vague the law is rendered void on its face; or (2) if it is vague as applied in a particular circumstance.

> The general rule is that a statute or ordinance is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute. *United States v. Harriss* (1954), 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989.

*City of Choteau v. Joslyn* (1984), 208 Mont. 499, 505, 678 P.2d 665, 668.

I conclude that the combination of §§ 45-5-201 and -202(2)(a), MCA, are unconstitutionally vague as applied to the facts in this case because a person of ordinary intelligence would not know where misdemeanor assault leaves off and felony assault begins. According to the majority's opinion, such a distinction can only be made on an after-the-fact, case-by-case basis.

The majority's decision says, in effect, to the public: **"We** can't define exactly what felony assault is but we know it when we see **it."** The problem is that with this approach no citizen will ever know ahead of **time** whether by engaging in a simple barroom fight they are exposing themselves to charges of misdemeanor assault or felony assault. If a participant strikes someone with his fist, can he assume that he is committing a misdemeanor? On

21

the other hand, if he wears a glove and commits the same act with no greater damage to the victim, is he then exposing himself to imprisonment for a period 20 times greater and a fine 100 times greater?  Why would any rational person assume those facts to be true ahead of time?

Would striking someone with a hand constitute the use of a weapon?  If so, then what kind of assault would ever rise to the level of a simple misdemeanor?  Would it be a misdemeanor to strike someone with a hand, but a felony to strike someone with your foot?  Would it be a misdemeanor to strike someone with a bare foot, but a felony to strike someone in the exact same way causing no greater harm when that same foot is covered with a lightweight pliable form of canvas?  If so, why?  And, what basis would the average citizen have for assuming these distinctions to be true?

In light of this decision, should there be a five-day waiting period and should backgrounds be checked before a person can purchase tennis shoes?  Are tennis shoes protected by the Second Amendment?  Can we look forward to a new round of slogans such as: "Tennis shoes don't kill people.  People kill people."  Should children be allowed to wear tennis shoes, or only adults?

The majority's case-by-case, after-the-fact approach to distinguish between the commission of a misdemeanor and a felony is exactly what was prohibited by the United States Supreme Court in *Bouie v. City of Columbia* (1964), 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894.  In that case, several African-American citizens entered an all-white lunch counter in Columbia, South Carolina.

22

There were no signs nor notices posted which prohibited their entry. However, they were not served and were asked to leave. They refused to do so and were charged with, among other things, criminal trespass. They were convicted of that offense and their conviction was affirmed by the South Carolina Supreme Court. The terms of the statute pursuant to which they were convicted prohibited "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry . . . ." *Bouie,* 378 U.S. at 349-50. However, the South Carolina Supreme Court construed the statute to prohibit not only entry on the premises of another, but also the act of remaining on the premises of another after receiving notice to leave.

The defendants in that case appealed their conviction to the United States Supreme Court on the grounds that the statute did not provide fair warning to them that their conduct was a violation of the law and that when the South Carolina Supreme Court construed the statute as it did, they were punished for conduct that was not criminal at the time they committed it, and therefore, their rights under the Due Process Clause were violated. The Supreme Court agreed. It pointed out that:

> The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court. As was said in *United States v. Harriss*, 347 U.S. 612, 617,

> "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle

23

> is that no man shall be held criminally responsible
> for conduct which he could not reasonably
> understand to be proscribed.*'
>
> Thus we have struck down a state criminal statute under
> the Due Process Clause where it was not "sufficiently
> explicit to inform those who are subject to it what
> conduct on their part will render them liable to its
> penalties." *Connally v. General Const. Co.,* 269 U.S. 385, 391.
> We have recognized in such cases that "a statute which
> either forbids or requires the doing of an act in terms
> so vaguethatmen of common intelligence must necessarily
> guess at its meaning and differ as to its application,
> violates the first essential of due process of law," *ibid.,*
> and that "No one may be required at peril of life,
> liberty or property to speculate as to the meaning of
> penal statutes. All are entitled to be informed as to
> what the State commands or forbids." *Lanzetta v. New Jersey,*
> 306 U.S. 451, 453.

*Bouie,* 378 U.S. at 350-51 (footnote omitted).

The Supreme Court pointed out that the typical application of the vagueness doctrine was to situations where the language of the statute itself was either vague or over-broad. However, *in* language relevant to the situation in this case, the Court pointed out that a statute can be made vague by its judicial application. The Court held that it was equally objectionable from a constitutional standpoint when a statute "precise on its face" is "'unforeseeably and retroactively expanded by judicial construction . . . .'" *Bouie,* 378 U.S. at 352. The Court stated that:

> There can be no doubt that a deprivation of the
> right of fair warning can result not only from vague
> statutory language but also from an unforeseeable and
> retroactive judicial expansion of narrow and precise
> statutory language. As the Court recognized in *Pierce v.
> United States,* 314 U.S. 306, 311, "judicial enlargement of
> a criminal Act by interpretation is at war with a
> fundamental concept of the common law that crimes must be
> defined with appropriate definiteness."

24

*Bouie* , 378 U.S. at 352.

In fact, the Court pointed out that when courts unforeseeably expand criminal liability, as the majority has done in this case by judicial interpretation, more than the Due Process Clause is offended. Such after-the-fact expansion of criminal liability also violates Article I, Section 10, of the United States Constitution which prohibits *expostfacto* laws. In that regard, the Supreme Court stated:

> Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *expostfacto* law, such as Art. I, § 10, of the Constitution forbids. An *expostfacto* law has been defined by this Court as one "that makes an action done before the passing of the law, and which was *innocent* when done, criminal: and punishes such action," or "that *aggravates* a *crime,* or makes it *greater* than it was, when committed." *Calder v. Bull,* 3 Dall. 386, 390. If *a* state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. Cf. *Smith v. Cahoon,* 283 U.S. 553, 565. The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred,'* Hall, General Principles of Criminal Law (2d ed. 1960), at 58-59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect. *Id.,* at 61.
>
> . . . When a similarly unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime. Applicable to either situation is this Court's statement in *Brinkerhoff-Faris [Trust & Sav. Co. v. Hill,* 281 U.S. 673, 678],* that "if the

25

> result above stated were attained by an exercise of the State's legislative power, the transgression of the due process clause of the Fourteenth Amendment would be obvious," and "The violation is none the less clear when that result is accomplished by the state judiciary in the course of construing an otherwise valid . . . state statute." *Id.*, at 679-680.

*Bouie*, 347 U.S. at 353-55 (footnote omitted).

Likewise, in this case, the majority's decision was an unforeseeable enlargement of a criminal statute. It takes an act that any reasonable person would assume was a simple misdemeanor assault and makes it a felony punishable by ten years imprisonment based *on a* judicial decision ren'dered after the act occurred.

Had defendant and Darling engaged in a simple barroom fight during which Darling was kicked by defendant, but from which Darling's injuries were no greater than they were *in* this case, defendant would never have been charged with felony assault, and this Court would never have affirmed a conviction for felony assault had he been so charged. This charge and this decision are simply the result of accusations that defendant committed other aggressive acts of a much more serious nature, but which were never proven and for which defendant was acquitted. This case is a classic example of bad facts resulting in bad law.

For these reasons, I would reverse the judgment of the District Court. I would, as the majority did, construe defendant's post-trial motion as a motion for a new trial pursuant to § 46-16-702, MCA, and pursuant to that motion, I would modify the verdict by finding defendant guilty of the lesser included offense

of misdemeanor assault in violation of § 45-5-201(1)(a), MCA, since I conclude there was sufficient evidence to sustain conviction for that offense.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissent.

_____
Justice

27