No. 97-441

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 61


STATE OF MONTANA,

Plaintiff and Respondent,

v.

ALOYSIUS BIG HAIR,

Defendant and Appellant.



APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Big Horn,
         Honorable Robert W. Holmstrom, Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

James L. Vogel, Hardin, Montana

For Respondents:

Honorable Joseph P. Mazurek, Attorney General; John Paulson,
        Assistant Attorney General, Helena, Montana

Christine A. Cooke, County Attorney; Curtis Bevolden, Deputy
        County Attorney, Hardin, Montana



                    Submitted on Briefs:    December 18, 1997

                    Decided:     March 20, 1998

                    Filed:

                    _____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1    Aloysius Big Hair appeals his conviction of driving while under the influence of alcohol (DUI), fourth offense, in the Thirteenth Judicial District Court, Big Horn County.

We affirm.

¶2    The issues are whether the District Court erred in denying Big Hair's motions to continue trial due to the unavailability of a witness and to quash reference to his previous DUI convictions on grounds that he had not been properly advised of his right to counsel in relation to those convictions.

¶3    On April 5, 1996, Big Hair was arrested in Hardin, Montana, on a DUI charge.  He was charged under § 61-8-401, MCA (1985), with DUI, fourth offense, based on his previous DUI convictions in 1987, 1988, and 1989.

¶4    At the jury trial on the April 1996 charge, Big Hair and his wife testified that their pickup had disappeared from their home south of Crow Agency, Montana, during a party some time the night before his arrest.  They both testified that they had caught a ride to Hardin on the morning of April 5 to look for the truck.  Mrs. Big Hair testified that she waited for her husband with friends in a bar while he searched for the truck.  Big Hair testified that he walked around Hardin looking for the truck, periodically returning to the bar where his wife waited for him, and finally found the truck parked in the downtown area.  Just as he found the truck and reached in through the window to retrieve the keys, a highway patrol officer approached him and arrested him for DUI.

¶5    The highway patrol officer testified that he had received a radio transmission concerning a possible DUI driver in a pickup truck at about 6:00 p.m. on April 5, 1996.  The report included a description of the truck and its license plate number, and information that it had three occupants.  The officer did not find the truck at the reported location.

¶6    A few minutes later, the officer received a second radio transmission concerning the location of the pickup.  He made a U-turn and found the truck parked with three occupants in a spot where it had not been minutes before.  Big Hair was seated behind the

steering
wheel.  The officer testified that as he approached the truck, Big Hair got out and began
walking across the street.  The officer stated that Big Hair admitted that he had been driving
and that he had had "a couple beers."  After administering field sobriety tests, the officer
arrested Big Hair and took him to the local police station, where his blood alcohol
concentration was measured at .337.

¶7    The jury convicted Big Hair of DUI.  The District Court denied Big Hair's post-trial
motions to quash reference to his prior DUI's and for new trial based on denial of his pretrial
motion for a continuance.

Issue 1

¶8    Did the District Court err in denying Big Hair's motion to continue trial due to the
unavailability of a witness?

¶9    Section 46-13-202, MCA, gives a district court discretion in considering a motion to
continue trial.  At subsection (3), the statute provides that it is to be construed "to the end
that criminal cases are tried with due diligence consonant with the rights of the defendant and
the prosecution to a speedy trial."  When reviewing the denial of a motion for continuance,
this Court determines whether the district court abused its discretion.  State v. Haskins
(1992), 255 Mont. 202, 207, 841 P.2d 542, 545.

¶10  Big Hair moved for a continuance on the day before trial.  His motion stated that an
eyewitness to the alleged offense, an alleged passenger in his truck who had previously stated
his willingness to come to court, could not be located.  The defense alleged that this witness
would testify to Big Hair's level of intoxication and, the defense believed, that Big Hair was
not driving the pickup.  The defense contended that "because of the relatively short trial
setting in this matter, [the witness] was not able to be informed thereof."

¶11  In oral argument on this motion just before voir dire of the jury, the State responded
that the evidence would speak for itself--the State would offer the results of the breath test
as to Big Hair's level of intoxication, and the testimony of the arresting officer as to whether

Big Hair was driving the truck.  The State objected to a continuance on grounds that the
arresting officer had accepted a job in Oregon and would be leaving Montana, resulting in
the potential expense of having him come back to Montana to testify if the continuance were
granted.

¶12  Big Hair's trial was set six months in advance, in April 1996, for October 7, 1996.
On October 11, 1996, trial was rescheduled for October 17, 1996, apparently due to the
court's crowded docket on October 7.

¶13  There is no record or claim that Big Hair objected to the rescheduled trial date when
it was set.  Nor did he present any basis for his stated belief that his witness could be located
within a reasonable time if a continuance was granted.  He provided only rather vague oral
representations by his counsel regarding the nature of the proposed witness's testimony.

¶14  The District Court denied Big Hair's October 16 motion for a continuance on grounds
that it was belatedly filed.  After reviewing the record, we hold that the District Court did not
abuse its discretion in denying the motion for a continuance.

Issue 2

¶15      Did the court err in denying Big Hair's motion to quash reference to his previous DUI
convictions on grounds that he had not been properly advised of his right to counsel in
relation to those convictions?

¶16  In Montana, a rebuttable presumption of  regularity attaches to a prior DUI conviction
during a collateral attack such as the one Big Hair raises here.  This presumption must be
overcome by direct evidence of irregularity by the defendant; the burden then shifts to the
State to prove by direct evidence that the prior conviction was not obtained in violation of
the defendant's rights.  State v. Okland (Mont. 1997), 941 P.2d 431, 436, 54 St.Rep. 467,
470-71.

¶17  At the hearing on the motion to quash, the District Court heard testimony from Big
Hair and from Judge Snively, the justice of the peace who presided at Big Hair's 1987, 1988,

and 1989 DUI convictions.  In its written order denying the motion to quash, the District
Court reasoned as follows:

> [T]he records of the lower court for each of the Defendant's three convictions and the testimony of Judge Snively established that the Defendant's right to counsel was explained to him and that he knowingly and intelligently waived his right prior to the entry of his plea of guilty.  The Defendant did not controvert this evidence, he merely testified that he did not recall whether his rights had been explained and whether he understood them and waived them. The Court concludes, under the facts of this case, that the lower court record was not silent and that the State of Montana sustained its burden of proving that the Defendant's Sixth Amendment right had been afforded to him during each of his prior convictions.

Big Hair argues that there was insufficient evidence that he was properly advised of and
waived his constitutional right to counsel in his 1987, 1988, and 1989 DUI convictions.

¶18  Big Hair did not present any direct evidence in support of his claim that his constitutional right to counsel was violated in the prior proceedings.  He testified only that
he could not recall whether he had been advised of his right to counsel and whether he had
waived that right.  We conclude that, like the defendants in State v. Perry (Mont. 1997), 938
P.2d 1325, 54 St.Rep. 478, and State v. Stubblefield (Mont. 1997), 940 P.2d 444, 54 St.Rep.
605, Big Hair has failed to rebut the presumption of regularity with any direct evidence that
his constitutional right to counsel was violated.  Therefore, we hold that the District Court
did not err in denying his motion to quash.

¶19  Affirmed.

/S/  J. A.  TURNAGE

We concur:

/S/  JAMES C. NELSON
/S/  KARLA M. GRAY
/S/  JIM REGNIER


Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

¶20  I concur with the majority's conclusion that the defendant has failed to rebut the
presumption of regularity of the proceedings which led to his prior DUI convictions.

¶21  I dissent from the majority's conclusion that the District Court did not abuse

its

discretion when it denied the defendant's motion to continue the trial date so that he could

locate and produce an eyewitness to the events which were the basis for the charges against

him.

¶22 The majority points out that the District Court's primary basis for denying Big Hair's

motion to continue was that it was belatedly filed. Under the circumstances of this case, I

disagree. However, additional facts are necessary for an understanding of why Big Hair's

motion to continue was first filed the day before trial.

¶23 This case was originally set for trial as Case No. 10 on October 7, 1996. On appeal,

the defendant's attorney contends, and the State does not disagree, that he had been advised

the case would not go to trial on October 7 because of the number of other cases which were

set ahead of it. However, not until October 11 was the defendant advised by the District

Court that this case would go to trial on October 17, four working days later. According to

the defendant's attorney, he began his efforts to locate his eyewitness, Gilford Sees The

Ground, as soon as he was notified of the new trial date, but by October 16, realized that he

would probably be unsuccessful.

¶24 The transcript of the hearing on October 17 to consider Big Hair's motion to continue

demonstrates just how unexpected the whole scheduling process had been. The following

conversation occurred:

    THE COURT: I looked through the file. I guess I can't tell from the it [sic]
    how this thing ended up for today.

    [DEFENDANT'S ATTORNEY]: I guess what I understand, Your Honor, if
    I got the dates wrong, I understand the judge reset this for trial for today from
    last Thursday.

    [STATE'S ATTORNEY]: It was last Friday. It was set -- This is actually a
    case pending before Judge Colberg, and Judge Colberg was here in Hardin last
    Friday for an eight o'clock hearing, and it was reset at that time, although no
    written record or objection was entered.

    [DEFENDANT'S ATTORNEY]: My understanding, we had a motion pending
    to dismiss the charge. The judge ruled on that. I believe we got the ruling on
    that motion last Wednesday.

THE COURT: Judge Fagg did that?

[DEFENDANT'S ATTORNEY]: Yes. Essentially the matter then was rescheduled. Since that time we have been trying to locate a witness. The witness is Gilford Sees The Ground. We made quite an effort to locate him. Talked to family members. Talked to others, and haven't been able to locate him as of yet. We believe he is critical to the defense because he was present at the scene and would testify as to the intoxication level of the defendant, as well as, I believe, testifying that the defendant was not driving the pickup, and those are two of the three elements that have to be proven for this offense. He is an eyewitness to that. We believe he is very important to the defense in this matter. He has indicated a willingness to testify, but he just doesn't know about it. We haven't had time to locate him. For that reason, we filed our motion to continue. We believe, with additional time, we could locate him, and that he would be important to the defense in this matter.

¶25 Not only was Big Hair's motion to continue as timely as possible under the circumstances, the unavailable witness was critical to his defense. As pointed out in the majority opinion, Big Hair and his wife denied that he had ever operated his motor vehicle in the condition in which he was found. It was their testimony that the vehicle had been taken from his home the night before and that just prior to the time he was observed by the arresting officer, he had located the vehicle and removed the keys. He was not observed operating the vehicle by the arresting officer.

¶26 Obviously no affidavit could be produced from Sees The Ground prior to trial because he was unavailable. However, in an affidavit filed in support of the defendant's motion for a new trial, Sees The Ground made the following statements under oath:

2. That the undersigned recalls the events of April 5, and did observe the arrest of Aloysius Big Hair when the highway patrol took him into custody for an alleged DUI.

3. That the undersigned did observe Aloysius Big Hair immediately before the arrest, and observed that he was not driving just prior to the time the officer did take him into custody.

4. That the undersigned did observe Aloysius Big Hair in the time immediately prior to the arrest, and was aware that Aloysius Big Hair was looking for his pickup, which was missing from his place of residence since earlier that day.

     5.    That immediately prior to his arrest, Aloysius Big Hair did find his pickup, and had just retrieved the keys therefrom when the officer took him into custody.

     6.    That the undersigned has been willing to testify on behalf of Aloysius Big Hair regarding this matter, but was not available at the time this matter was set for trial in October.

¶27 Based on the circumstances in which the defendant's attorney found himself at the time of the rescheduled trial, there was no legitimate basis for denying his motion to continue the trial.  The State's only objection was that the investigating officer was leaving the state at the end of the month; however, the State also pointed out that he could return to the state for trial.  At most, the disadvantage to the State was the travel expense of having the investigating officer return.  That amount of additional expense was not a significant factor when balanced against the unavailability of an eyewitness who was willing to testify on the defendant's behalf.

¶28  I conclude that the defendant's motion to continue the trial date was not belated.  The continuance was necessary in order to assure that the defendant receive a fair trial, and when the District Court denied the motion for a continuance based on its stated reason, the District Court abused its discretion.

¶29  For these reasons, I dissent from the majority opinion which affirms the District Court's denial of the defendant's motion for a continuance.  I would reverse the defendant's conviction and remand to the District Court for a new trial.

                /S/  TERRY N. TRIEWEILER